```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

        -against-                       MEMORANDUM & ORDER
                                        89-CR-0229-2(JS)
GERALDO VEGA,

                Defendant.
----------------------------------X
APPEARANCES
For United States:   Erin Argo, Esq.
                     U.S. Attorney's Office
                     Eastern District of New York
                     271 Cadman Plaza East
                     Brooklyn, New York 11201

For Defendant:       Matthew W. Brissenden, Esq.
                     Matthew W. Brissenden, P.C.
                     666 Old Country Road, Suite 501
                     Garden City, New York 11530
```

SEYBERT, District Judge:

Defendant Geraldo Vega ("Defendant") seeks a reduction of his sentence, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), in light of health concerns surrounding the COVID-19 pandemic, his age, his underlying medical conditions, and Federal Correction Institute Fort Dix's ("FCI Fort Dix") pandemic response. (Mot., D.E. 777; Suppl. Mot., D.E. 778.) For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

I.  Factual and Procedural History

The Court presumes familiarity with the facts that have been recited in prior orders and decisions from this Court and the

Second Circuit.  See, e.g., United States v. Vega, 11 F.3d 309, 310-12 (2d Cir. 1993).  By way of brief background, Defendant was arrested in 1985 by state authorities for narcotics-related offenses.  He was released on bond but failed to appear at trial.  He was thereafter convicted in absentia on multiple state narcotics offenses and sentenced by the state court in absentia to a term of twenty-five years to life imprisonment (the "State Sentence").

Defendant continued with the narcotics organization until his arrest in 1988.  In 1989, a federal grand jury indicted Defendant, alongside many others, on various racketeering, narcotics, firearms, and money-laundering offenses, among others, arising out of the distribution of hundreds of kilograms of heroin and for Defendant's role as second-in-command within the narcotics organization.  Defendant, and others, proceeded to trial before the Honorable Arthur D. Spatt.[1]  After sitting through two-thirds of trial, Defendant pled guilty to a one-count superseding information that charged him with conspiracy to distribute and to possess with intent to distribute more than 100 grams of heroin and more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846.  On November 15, 1991, Judge Spatt sentenced Defendant to 360 months' incarceration, to be served consecutively to the State Sentence.

---

[1] This matter was reassigned to the undersigned on June 30, 2020.

In September 2010, the state court vacated the State Sentence under New York State's 2004 Drug Law Reform Act and resentenced Defendant to an effective sentence of fifteen years. (State Order, Ex. C to Def. Mot., D.E. 777-4.) In vacating the State Sentence, the state court noted that Defendant, who was then 54 years old and suffered "severe hearing loss," was "cited as a mentor to other inmates, has taken many courses involving drug counseling and has worked assisting other inmates." (Id. ¶¶ 2-5.)

## II. FCI Fort Dix

Defendant is currently incarcerated at FCI Fort Dix and is expected to be released on July 18, 2028. See BOP.gov, www.bop.gov/inmateloc/index.jsp (last visited Nov. 25, 2020). On October 22, 2020 and November 19, 2020, Defendant advised the Court as to the growing rate of reported COVID-19 positive inmates and staff at FCI Fort Dix. (Oct. 22, 2020 Ltr., D.E. 784 (noting 159 positive inmate tests at FCI Fort Dix); Nov. 19, 2020 Ltr., D.E. 785 (noting 417 inmates tested positive for COVID-19 at FCI Fort Dix).) According to the information maintained by the Bureau of Prisons ("BOP"), as of November 30, 2020, FCI Fort Dix is listed as having the highest number of positive COVID-19 cases among its inmates, with 303 inmates and 28 staff members listed as "positive" for COVID-19 and 47 inmates and 6 staff members listed as "recovered" from the virus. See COVID-19 Cases, BOP.gov,

3

http://www.bop.gov/coronavirus/ (last visited Dec. 1, 2020).  By letters dated November 24, 2020 and December 1, 2020, Defense counsel advised that Defendant tested positive for COVID-19 and is suffering from flu-like symptoms that vary in intensity.  (Nov. 24, 2020 Ltr., D.E. 786; Dec. 1, 2020 Ltr., D.E. 787.)

III. Defendant's Medical Conditions and Post-Sentencing Conduct

Defendant is 65 years old and has been incarcerated for 32 years.  As reflected in his medical records, Defendant is designated as a "Chronic Care" inmate and suffers from hearing loss and various ailments, including hypertension, hyperlipidemia, mitral valve prolapse, and anemia.  (Oct. 2. 2016 Recs., Ex. F to Def. Mot., D.E. 777-7 (noting mitral valve prolapse (moderate degree)); Mar. 20, 2018 Rec., Ex. H to Def. Mot., D.E. 777-9 (noting history of asthma and high blood pressure); Nov. 5, 2018 BOP Recs., Ex. G to Def. Mot., D.E. 777-8 (noting "Chronic Care" visit and diagnosis of anemia and vitamin B12 deficiency); Feb. 6, 2020 Rec., Ex. K to Def. Mot., D.E. 777-12 at 3 (noting hyperlipidemia, hypertension, and hypotension); BOP Recs., Ex. M to Def. Mot., D.E. 777-14, at ECF pp. 8-9 (noting cataract, hearing loss, hyperplasia of prostate, degeneration of intervertebral disc, vitamin B12 deficiency anemia, hyperlipidemia, hypertension, spina stenosis).)  Defendant was also diagnosed with lumbar stenosis and underwent back surgery in January 2020.  (St. Francis Recs., Ex. I to Def. Mot., D.E. 777-10.)  He suffered complications

4

and spent sixteen days in the hospital. (Brissenden Decl., D.E. 777-1, ¶ 12.) Defendant ambulates with a cane, a back brace, and compression garment and is housed on the first floor and a bottom bunk due to his conditions and difficulties with stairs. (Id. ¶ 22; May 28, 2020 BOP Rec., Ex. L to Def. Mot., D.E. 777-13 (noting back brace); Ex. M to Def. Mot. (noting hearing aid and cane).) Defendant is also prescribed many different medications for these conditions. (Medication Summ., Ex. N to Def. Mot., D.E. 777-15.)

While incarcerated, Defendant has become a "model inmate" and has participated in, and led, various programs. (Brissenden Decl. ¶ 9; Def. Certs., Exs. B and D to Def. Mot., D.E. 777-3 and 777-5, respectively; 2019 Def. Certs., Ex. C to Def. Suppl. Mot., D.E. 778-3.) Defendant also participates in the BOP's UNICOR program and submitted letters from individuals attesting to his character, including a letter from D. Siddiqui, the Quality Assurance Manager for UNICOR at FCI Fort Dix, R. Rodriguez, Defendant's supervisor, and Defendant's daughter. (See Support Ltrs., Exs. A and B to Def. Suppl. Mot., D.E. 778-1 and 778-2, respectively.) Throughout his period of incarceration, Defendant has two minor infractions, and as understood by the Court, neither were for violence. (Discipline Data, Ex. C to Def. Reply, D.E. 780-3.)

DISCUSSION

I.  Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, No. 02-CR-0743, 2020 WL 497987, at *1 (S.D.N.Y. Apr. 6, 2020)). The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Under the statute, courts have discretion to grant compassionate release when there are (1) "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)." United States v. Canales, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

6

District courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2020); see id. at 236 (finding that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling"). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Id. at 237-38 (quoting 28 U.S.C. § 994(t)) (emphasis and alteration in original).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted). A defendant "bears the burden of showing that his release is justified." United States v.

Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020).

II. Analysis

The parties do not dispute that Defendant exhausted his administrative remedies. The Court thus turns to the merits.

A. Extraordinary and Compelling Reasons

Defendant argues his rehabilitation, age, underlying health conditions, and FCI Fort Dix's pandemic response are "extraordinary and compelling" reasons that justify his release. (See generally Brissenden Decl.; Def. Reply, D.E. 780.) If released, Defendant will reside at his daughter's apartment in Hackensack, New Jersey to recover[2] (Dec. 1, 2020 Ltr. at 6) and will ultimately live in Brooklyn, New York with his Daughter's mother, where he will seek medical care (Revised Def. Comp. Release App., Ex. Q to Brissenden Decl., D.E. 777-18, at ECF p. 7). The Government opposes the Motion and argues that Defendant's medical conditions "do not rise to the level identified in the Guidelines that would, by themselves, require release," and, in any event, "Fort Dix Low has ensured that [Defendant] has received regular

---

[2] His daughter will live with her mother while Defendant recovers and will be available to assist. (Dec. 1, 2020 Ltr. at 6.)

8

medical care, surgery where indicated," and medications, among other things.³ (Gov't Opp., D.E. 779, at 9-10.)

Upon a review of the submissions, the Court finds that the unique facts here establish "extraordinary and compelling reasons" to modify Defendant's sentence. 18 U.S.C. § 3582(c)(1)(A)(i); United States v. Rice, No. 83-CR-0150, 2020 WL 4505813, at *3 (S.D.N.Y. Aug. 5, 2020). Under the standards provided by the Centers for Disease Control and Prevention (the "CDC"), Defendant's age and underlying conditions place him at risk of severe complications from COVID-19. Older Adults, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Nov. 27, 2020) (noting people between 65 and 74 years of age are 5 times more likely to require hospitalization and 90 times more likely to die from complications due to COVID-19); People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 1, 2020). However, now that Defendant has contracted COVID-19, "the Court focuses on the impact of COVID-19 on [Defendant] and his ability to 'provide self-care' within the correctional facility in light of his diagnosis." United States

---

³ The Government has not responded to any of Defendant's subsequent filings, including representations regarding FCI Fort Dix and Defendant's COVID-19 diagnosis.

9

v. Adams, No. 10-CR-0082, 2020 WL 4505621, at *3 (S.D.N.Y. Aug. 4, 2020).

Here, given Defendant's underlying health conditions, "his recent COVID-19 infection, and the failure of the Bureau of Prisons to prevent and control a COVID-19 outbreak at FCI Fort Dix," the Court finds that continued confinement "'substantially diminishes' his 'ability . . . to provide self-care.'" United States v. Mongelli, No. 02-CR-0307, 2020 WL 6449237, at *3 (E.D.N.Y. Nov. 3, 2020) (quoting U.S.S.G. § 1B1.13 Application Note 1(A)) (alteration omitted); United States v. Barajas, No. 18-CR-0736, 2020 WL 3976991, at *9 (S.D.N.Y. July 13, 2020) ("But the Court is not only evaluating Mr. Barajas's application based on his pre-existing conditions. Rather, the Court must consider the full record before it. That includes Mr. Barajas's recent COVID-19 diagnosis and the highly disturbing circumstances surrounding it."). Indeed, "there is no guarantee that [Defendant's] symptoms and medical needs will remain so minimal, especially given his underlying condition[s]," Mongelli, 2020 WL 6449237, at *3, and "some research, to date, at least indicates that the absence of severe symptoms does not necessarily diminish the risk of long-term health complications," Barajas, 2020 WL 3976991, at *10 (citations omitted). Given that there is "extraordinary little [known] about the long-term prognosis for a patient diagnosed with COVID-19," the Court concludes that were Defendant "[c]onfined to

10

a small cell where social distancing is impossible," he "cannot provide self-care because he cannot protect himself from the spread of a dangerous and highly contagious virus," that, unfortunately, he already contracted.[4]  United States v. Perez, 451 F. Supp. 3d 288, 293-94 (S.D.N.Y. 2020); see also United States v. Staats, No. 17-CR-0461, 2020 WL 6888224, at *2 (E.D. Pa. Nov. 24, 2020) (granting compassionate release where a defendant tested positive for COVID-19 and noting that "Fort Dix is experiencing an uncontrolled outbreak of COVID-19" and that the Government "clearly [has] not protected [the defendant] and the 245 other prisoners and 18 staff who contracted COVID-19").  For these reasons, the Court finds "extraordinary and compelling circumstances" warrant a reduction of Defendant's sentence.

B. The 3553(a) Factors

The Court has considered the Section 3553(a) factors and find they weigh in favor of release.  See 18 U.S.C. § 3582(c)(1)(A)(i); United States v. Harris, No. 15-CR-0445, 2020

---

[4] Moreover, the "uncertainties" surrounding the long-term effects of COVID-19 "coupled with the fact that [Defendant] has already been infected once," raises the "very real risk that re-exposure to the virus could spell disaster for [Defendant], a risk that appears to be heightened at" FCI Fort Dix. Barajas, 2020 WL 3976991, at *10 (collecting cases where courts granted compassionate release to a defendant who already contracted COVID-19 because, for example, "it [was] uncertain whether [defendant] [could] contract COVID-19 more than once, and the potential long-term effects of the illness are still undetermined" when factoring his health condition).

WL 5801051, at *2 (S.D.N.Y. Sept. 29, 2020) (considering the Section 3553(a) factors and recognizing that, under Brooker, "when assessing a motion brought directly by an imprisoned person rather than by the BOP, the Court is constrained neither by U.S.S.G. 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community").

The Court does not make this decision lightly: Defendant pled guilty to, and was sentenced for, serious crimes. Indeed, as stated by Judge Spatt, who "never [saw] anything like it," Defendant was "a major figure, second . . . in this horrendous drug operation which caused murder, maiming, kidnapping and destruction . . . ." (Sent'g Tr., Ex. E to Gov't Opp., D.E. 779-5, at 40:13-14, 42:4-7.) It is thus true that the "severity of [Defendant's] conduct remains unchanged," however, the "environment where [he] is serving his sentence" has certainly changed. United States v. Zukerman, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020) ("When the Court sentenced [Defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." (quoting United States v. Rodriguez, No. 03-CR-0271, 451 F. Supp. 3d 392, 407 (E.D. Pa. Apr. 1, 2020))). Defendant has been incarcerated for nearly 32 years, which is "substantial . . . as befits the nature and circumstances of the offense."

Mongelli, 2020 WL 6449237, at *3. The Court's determination that "extraordinary and compelling" reasons justify a modification of Defendant's sentence "undercut the possibility that a longer sentence would be necessary to reinforce principles of deterrence: the position in which [Defendant] finds himself is both unique and unfortunate, and no right-minded observer would regard his release, at this juncture and under these circumstances, as a windfall." Id.

Moreover, Defendant has taken significant steps towards rehabilitation and "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing." Pepper v. United States, 562 U.S. 476, 491 (2011). The Court credits Defendant's 32-year disciplinary record and notes that "the absence of any disciplinary infraction related to violence or drug use, demonstrates that he is unlikely to commit future criminal acts or pose a danger to the community." United States v. Yu, No. 90-CR-0047, 2020 WL 6873474, at *5 (S.D.N.Y. Nov. 23, 2020). Therefore, the period of incarceration that Defendant has already served, with the forthcoming period of supervised release, is sufficient but not greater than necessary and complies with the purposes of sentencing under Section 3553(a).

13

CONCLUSION

For the reasons stated herein, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (D.E. 777 and D.E. 778) is GRANTED.  The Court hereby orders that:

(1) Defendant's sentence is modified to time served, with the remainder of the sentence he would otherwise have served (as calculated by the BOP) to be served on supervised release, a special condition of which is that Defendant shall be in home confinement with electronic monitoring during his period of supervised release, except as necessary for his receipt of medical care; and

(2) Defendant's release is conditioned on his testing negative for COVID-19.  He shall remain in isolation at FCI Fort Dix until he is medically cleared under applicable CDC guidelines.  Once Defendant is medically cleared, he is to be released from FCI Fort Dix's custody immediately to begin his home confinement; and

(3) Defendant will continue to be subject to the previously imposed term(s) of supervised release, including all standard, mandatory, and special conditions of supervision delineated at sentencing by the Court; and

14

(4) Within one week of his release, Defendant shall call Probation to schedule an appointment.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: December   2  , 2020
       Central Islip, New York

15